GEORGE T. BUTLER, Respondent, *v.* JOHN H. LEADLEY Co., INC., Appellant.

Second Department, December 31, 1930.

*James Burke* [*Joseph LaRocca* with him on the brief], for the appellant.

*Joseph P. Walsh* [*Frank H. Innes* with him on the brief], for the respondent.

KAPPER, J. The plaintiff on January 27, 1926, purchased a second-hand car from the defendant, a company that dealt in Ford automobiles both new and used. The price paid was $210, of which $100 was paid in cash and a series of notes for installment payments were given for the balance. Plaintiff used the car continuously until the eighth of May following its purchase, when he was arrested by a policeman who on raising the hood of the car found a changed motor number, that is to say, there was a motor number superimposed on the old number. Plaintiff was locked up overnight and on the following morning was admitted to bail. He was subsequently held for the grand jury, but that body refused to find an indictment. The criminal charge was based upon section 436-a of the Penal Law, █ which then provided:

"A person who:   *   *   *

" 2. Knowingly buys, sells, receives, disposes of, conceals or knowingly has in his possession any motor vehicle, as defined in section two hundred and eighty-one of the Highway Law, █ from which the manufacturer's serial number or any other distinguishing number or identification mark has been removed, defaced, covered, altered or destroyed for the purpose of concealment or misrepresenting the identity of the said motor vehicle, or mechanical device, is guilty of a felony."

When plaintiff purchased the car he received from the defendant

a paper headed " Conditional Sale Contract." The motor number was stated therein.

Defendant purchased this second-hand car from Cornelius A. Hall, a well-known public official in the borough of Richmond. Mr. Hall owned the car from 1922 until 1925, when he traded it in to the defendant for a new car of another make. The car, while in Mr. Hall's ownership, had frequently been repaired, and the engine block, where the motor number is stamped, had been changed, but it is not claimed, nor was it proved, that the motor number of the car as turned in by Hall to the defendant was not a genuine or even the original number. It was not disputed that Hall's license or registration card corresponded to the alleged superimposed number on the block or motor.

The testimony on defendant's behalf was that it knew nothing of any changed number. Its man in charge of its repair shops overhauled the car. Nothing was done by him to affect the motor number.

The complaint states the facts of plaintiff's purchase of the car and his subsequent arrest; and the damages sought seem to be predicated wholly on plaintiff's arrest and incarceration. At the outset of the trial, in answer to an inquiry by the court whether the action was one for " malicious prosecution and false arrest," plaintiff's counsel replied that it was not, but based his cause of action upon the theory of a breach of an implied warranty and the consequences of the purchase and possession by plaintiff said to have naturally flowed from the sale of the car. The only basis for the so-called implied warranty is the conditional sale contract upon which was inscribed the motor number. I am at a loss to understand what implied contract was conveyed. The motor number on the contract was the number on the engine, and was the number that Mr. Hall had upon his registration card and by which the car was sold by Hall to the defendant. While the car was in Mr. Hall's ownership he had numerous and expensive repairs made to it by one Hanson, but Hanson was unable to recall whether he had ever done anything to that part of the car called the block upon which the motor number was stamped. At which place or shop this superimposed number was put upon the block nowhere appears, but there is no dispute of Mr. Hall's sale with the number that was on his car to the defendant nor that that was the number under which the car was sold by the defendant to plaintiff without defendant's knowledge that there had ever been any change of number. If the defendant on inspection could have seen that a number had been superimposed the plaintiff could equally have seen it.

Defendant's salesman, Newby, who sold the car to plaintiff,

testified that when the car came in from the repair shop to the defendant's showroom it was in running order; that with the car when it came in was Mr. Hall's registration card which was later filed with the plaintiff's application for license plates. When Newby learned of plaintiff's arrest he went to the Magistrate's Court to " see if I could help him out, do what I could for him; " and upon cross-examination on the present trial he admitted that in testifying before the magistrate he said that " we took a motor from down at the garage and replaced it." This testimony was admitted solely on the question of credibility. Newby, however, testified that at the time he gave this testimony before the magistrate he was trying to help out the plaintiff here. Repeated questions, on redirect, sought to elicit the fact that when Newby testified before the magistrate to the replacement of the motor he knew nothing about it, and that no such thing had been done. Objections to this testimony were sustained, and, in my opinion, erroneously so. In any event, the testimony of replacement given before the magistrate was in the case only on the question of credibility and had no other probative force. If sought to give it a proof basis for the alleged fact of a change of motor number, the evidence was incompetent as a mere declaration after the event and not binding upon the defendant. (*Burns* v. *Borden's Condensed Milk Co.*, 93 App. Div. 566; *Sherman* v. *D., L. & W. R. R. Co.*, 106 N. Y. 542.)

The evidence in this case does not show that the defendant *knowingly* sold a car upon which the manufacturer's serial number had been removed, defaced, covered, altered or destroyed " for the purpose of concealment or misrepresenting the identity of the said motor vehicle." Nor did the plaintiff have the car in his possession with such knowledge and purpose, and for which reason the finding of an indictment against him was properly refused. · The situation which arose subsequently to the sale was unfortunate, but I do not think the defendant legally liable therefor.

In my opinion plaintiff failed to establish a cause of action against defendant, and the judgment should, therefore, be reversed upon the law and the facts, with costs, and the complaint dismissed, with costs.

YOUNG, HAGERTY and TOMPKINS, JJ., concur; LAZANSKY, P. J., concurs in result.

Judgment reversed upon the law and the facts, with costs, and complaint dismissed, with costs.